## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILL WRIGHT**<br><br>        **Plaintiff,**<br><br>            **v.**<br><br>**SONY PICTURES ENTERTAINMENT,**<br>**INC.**<br><br>        **Defendant.** | **Civil Action No.  03-2083 (JDB)** |

## <u>MEMORANDUM OPINION</u>

Plaintiff Will Wright ("plaintiff" or "Wright") brings this action against defendant Sony Pictures Entertainment Inc. ("defendant" or "Sony") for injuries allegedly suffered by plaintiff while participating as a contestant in the game show "Wheel of Fortune."  Presently before the Court is defendant's motion for summary judgment on the ground that under District of Columbia law plaintiff waived any and all claims for personal injury against defendant when he executed the "Contestant Release Form" prior to his participation in the game show.  Plaintiff responds that under Virginia law, if it applies to this action, there is a public policy forbidding waivers of personal injury claims.  For the reasons that follow, this Court will grant in part and deny in part defendant's motion for summary judgment.

## BACKGROUND[1]

The instant action is based on events that occurred at the October 14, 2000, taping of the game show "Wheel of Fortune" at Constitution Hall in Washington, D.C.  Compl. at 1.  The show is not normally taped in the D.C. metropolitan area, but was on a tour of United States cities at the time of the events at issue.  Pl. Dep. at 19.  As part of that tour, the show recruited local residents from the area to participate as contestants, using radio advertisements.  Id.

Plaintiff, in response to a "Wheel of Fortune" radio advertisement, attended an audition at Robert Fitzgerald Kennedy Memorial Stadium in Washington, D.C.  Id.  The first audition involved a few questions to the participants and a small stage simulating the show's set.  Pl. Dep. at 19.  After the audition (or at it), plaintiff was asked to return for a second audition to be held at a hotel in Washington, D.C., on October 10, 2000.  Pl. Dep. at 19-22.   After the second audition, plaintiff received a call on Thursday, October 12, 2000, at his home in Virginia from an individual with the "Wheel of Fortune" letting him know that he had been selected to be a contestant on the show.  Pl. Dep. at 27.  Plaintiff was told the taping of the show would occur in two days, on October 14, 2000, at Constitution Hall in Washington, D.C.  Pl. Dep. at 27.

On the morning of the show, plaintiff arrived at Constitutional Hall, along with other contestants.  Pl. Dep. at 27-28.  Prior to the show, plaintiff met with several individuals associated with production.  These individuals, whose names and positions are not provided in the record,

---

[1]Pursuant to Local Civil Rule 7(h) every summary judgment motion must be accompanied by a statement of material facts as to which there is no genuine issue.  The purpose of LCvR 7(h) is to "assist[ ] the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively."  Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150 (D.C. Cir.1996).  Defendant failed to accompany its motion with such a statement.  Although this Court will deny defendant's motion on other grounds, counsel are reminded that they are required to follow all local rules when submitting motions to the Court.

gave plaintiff some documents to review and sign.  Pl. Dep. at 25-26, 31, 34.  Among those

documents were the "Certificate of Wheel of Fortune Contestant," Pl. Dep. at 24, and the

"Contestant Release Form: Wheel of Fortune," which plaintiff has stated he read and signed prior

to participating as a contestant.  Pl. Dep. at 25-26.

      The Contestant Release Form is an eight-page, single-spaced document that covered a

variety of topics, from whether the contestant was affiliated with any of the organizations

producing the show to whether plaintiff was a candidate for federal office.  Pl. Dep., Ex. 3.

Paragraph 31 of the form, on page 7, was one of four paragraphs printed in all capital letters.  Id.

Paragraph 31 advised the contestants that they were waiving their rights to bring any claims

against defendant for damages arising out of "participation on the program or from use of any

prize."  Id.  This section of the form continued that "Wheel of Fortune" would not be responsible

for any personal articles lost by contestants during the show.  Id.  Next, the paragraph contains the

operative section for defendant's motion for summary judgment:

> I AGREE THAT I WILL NOT BRING OR BE A PARTY TO ANY LEGAL
> ACTION OR CLAIM AGAINST THE RELEASED PARTIES, BASED UPON
> OR ARISING OUT OF MY PARTICIPATION ON THE PROGRAM OR IN
> ANY WAY RELATED TO THE PROGRAM, OR ANY EXPLOITATION OF
> THE PROGRAM, ON ANY LEGAL THEORY (INCLUDING, BUT NOT
> LIMITED TO, PERSONAL INJURY . . . .)

Pl. Dep. Ex. 3, at 7.

      During the show, plaintiff was the winning contestant.  Pl. Dep. at 39-40.  After plaintiff

won, the show's host, Pat Sajak, approached plaintiff, at which time plaintiff believed that Sajak

was coming over to give him a congratulatory handshake.  Id. at 40.  Plaintiff put out his hand to

shake Sajak's hand, but instead of extending his arm, Sajak "jumped up on [plaintiff]."  Id. at 41.

Sajak then proceeded to wrap his arms around plaintiff's chest and his legs around plaintiff's waist

and then "kind of like bounced."  Pl. Dep. at 40-41.

Shortly after the show ended, while plaintiff was walking with his family, he perceived a sharp pain in his lower back.  Id. at 41-43.  As a result of this injury, which plaintiff attributes to the actions of Sajak, plaintiff suffered medical expenses, id. at 63, and mental anguish, Compl. at 2-3.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." <u>Id.</u> at 252.

## <u>ANALYSIS</u>

Currently before the Court is defendant's motion for summary judgment on the ground that plaintiff waived his rights to bring a claim of personal injury against Sony Pictures when he signed the Contestant Release Form.  Defendant argues that District of Columbia law applies to this action, and that, based on D.C. law, the "Contestant Release Form" signed by plaintiff exculpates defendant from liability to plaintiff.  Plaintiff, conversely, argues that Virginia law should apply to this action and that the release is unenforceable in Virginia on public policy grounds.  The Court will consider the parties' arguments in turn.

**I.      Choice of Law**

The forum state's choice of law rules apply in a diversity action.  <u>See Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>Lee v. Flintkote Co.</u>, 593 F.2d 1275, 1278-79 (D.C.Cir.1979).  Under District of Columbia choice of law rules, the Court must first determine whether there is a conflict in the potentially applicable legal standards of the two jurisdictions in question.  <u>See Young Women's Christian Assoc. of the Nat'l Capital Area, Inc. v. Allstate Ins. Co. of Canada</u>, 275 F.3d 1145, 1150 (D.C. Cir.2002) (citing <u>Eli Lilly & Co. v. Home Ins. Co.</u>, 764 F.2d 876, 882 (D.C. Cir.1985)).  Then, if there is a conflict, the District of Columbia's choice of law rules will determine which jurisdiction has a "more substantial interest" in the resolution of the issues.  <u>See Young Women's Christian Assoc. of the Nat'l Capital Area</u>, 275 F.3d at 1150.

Here, plaintiff, a citizen of Virginia, and defendant, incorporated in Delaware and

-5-

operating primarily in California, dispute which jurisdiction's law should apply.  Plaintiff argues that Virginia law should govern whether the prospective liability waiver he signed should bar his claims for negligence and infliction of emotional distress.  Defendant counters that District of Columbia law should apply because all the conduct at issue occurred within its borders.

The first step in this analysis is to determine whether there is, indeed, any conflict between Virginia and District of Columbia law regarding the application of prospective liability waivers. Id.  The law regarding prospective liability releases in Virginia is that they are forbidden and unenforceable in all instances.  See Hiett v. Lake Barcroft Community Assoc., Inc., 418 S.E.2d 894, 896 (Va. 1992) ("provisions for release from liability for personal injury which may be caused by future acts of negligence are prohibited 'universally'") (citing Johnson Adm'x v. Richmond and Danville R.R. Co., 11 S.E. 829, 830 (1890)).  In contrast, the District of Columbia does not have such a clearly articulated public policy against prospective liability waiver.  See Jaffe v. Palotta Teamworks, 374 F.3d 1223, 1226-27 (D.C. Cir. 2004) ("There is no definitive statute or case law indicating whether the District of Columbia would recognize a prospective liability waiver for a personal injury claim at all, and, if it did, what conditions and limitations, if any, it would first require.").

Based on this conflict, the Court must apply the District of Columbia's choice of law rules to determine which jurisdiction's law to apply.  Because different issues may require differing analysis, the particular choice of law rule to apply depends upon the specific issue.  See Jaffe at 1227.  In this case, although plaintiff's claims arise in tort, the application of a prospective liability waiver is fundamentally a contract issue, and therefore the District of Columbia choice of law rules

for contracts will apply.[2]  In resolving a contract question, the District of Columbia "applies the law of the state which has the 'more substantial interest in the resolution of the issue.'"  Coulibay v. Malaquias, 728 A.2d 595, 606 (D.C. 1999) (quoting Fowler v. A & A Co., 262 A.2d 344, 348 (D.C. 1970)).  The District of Columbia employs the Restatement (Second) of Conflict of Laws § 188 to determine which jurisdiction has the more "substantial interest."  See Ideal Electronic Sec. Co. Inc. v. Int'l Fidelity Ins. Co., 129 F.3d 143, 148 (D.C. Cir. 1997).  According to the Restatement, in contract cases the "contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of Laws § 188.

In this case, the first two contacts under the substantial interest inquiry are with the District of Columbia; the contract was entered into and negotiated here.  The next two contacts, the place of performance, and the location of the subject matter of the contract, implicate both the District of Columbia and Virginia.  The Contestant Release Form and specifically the prospective liability waiver term required performance by plaintiff both during and after the show.  As such, plaintiff's

---

[2]  If this court were to apply the choice of law rules for torts, it would not alter the application of District of Columbia law to this issue.  The District of Columbia's choice of law rule for torts follows the substantial interest test articulated by the Restatement (Second) of Conflict of Laws § 145 (1971).  See Jaffe, 374 F.3d at 1227 (citing Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002)).  The contacts a court is to consider are: (1) "the place the injury occurred"; (2) the "place the conduct causing the injury occurred"; (3) "domicile, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship is centered."  Id.  Under these factors, this Court would apply District of Columbia law because three of the four contacts occurred in the District of Columbia -- place of injury, place of conduct, and place of the relationship.

performance occurred both in the District of Columbia and Virginia, although the principal "performance" at issue certainly was in the District of Columbia, where the show was taped. Finally, under the last contact of the substantial interest inquiry, the relevant jurisdictions are Virginia, California, and Delaware.

On balance, the contacts dictate that the District of Columbia has the greatest interest in the resolution of this issue. The contract was negotiated, signed, and substantially performed in the District of Columbia. Furthermore, the elements of plaintiff's tort claims -- duty, tortious conduct, and damages -- which are directly implicated by the application of the prospective liability waiver, all arise in the District of Columbia. While Virginia may have an unambiguous public policy against recognition of prospective liability waivers, the District of Columbia has a strong interest in ensuring that its laws are applied to contracts that are negotiated, entered into, and substantially performed within its borders. Therefore, this Court will apply District of Columbia law regarding prospective liability waivers.

## II. The Effect of the Prospective Liability Waiver

Unlike Virginia, the District of Columbia is willing to recognize certain prospective liability waivers for claims of negligent conduct. For a prospective liability waiver to be enforced, at least for negligent conduct, "the law [of D.C.] requires that any alternation [sic] of the 'familiar rules visiting liability upon a tortfeasor for the consequences of his negligence' must be clearly and unambiguously expressed. No particular form or words are needed but the intent to waive negligence must be clear." Maiatico v. Hot Shoppes, Inc., 287 F.2d 349, 351-52 (D.C. Cir. 1961) (citing Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123-24 (1955) (Frankfurter, J., concurring)).

Although District of Columbia law may recognize a prospective liability waiver for claims of negligent conduct, for claims arising from reckless or intentional conduct the case law is silent. However, the Court of Appeals for the District of Columbia has adopted the Restatement when statutory or case law is otherwise silent.  See, e.g., Ellis v. James V. Hurson Assoc., Inc., 565 A.2d 615, 618 (D.C. 1989) (adopting "the modern and authoritative exposition" of the Restatement (Second) of Contracts §§ 186-88 to resolve the case); Scoggins v. Jude, 419 A.2d 999, 1004 (D.C. 1980) (utilizing the Restatement (Second) of Torts and "follow[ing] the Restatement's lead"). Under the Restatement (Second) of Contracts, prospective liability waivers are not recognized to exempt a party from recklessly or intentionally caused harms.  See Restatement (Second) of Contracts § 195(1) (1981) ("[a] term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy").

Applying this law here, defendant argues that plaintiff waived his rights to bring a negligence claim when he signed the Contestant Release Form, which clearly articulated an intent to waive claims for "personal injury."  Plaintiff counters that the Contestant Release Form was not sufficiently clear for plaintiff to understand that he was waiving his claims.  Specifically, plaintiff argues that the form does not release defendant from intentional acts nor does it specify that plaintiff is waiving claims for acts of individuals associated with the show.  Instead, argues plaintiff, the use of the term "personal injury" is not sufficiently clear and unambiguous to alter the "familiar rules visiting liability upon a tortfeasor . . . ." Maiatico, 287 F.2d at 351-52.

At the outset, however, the Court must consider whether plaintiff's claims can be waived in light of the public policy articulated in the Restatement prohibiting waiver of claims arising from reckless or intentional conduct.  Plaintiff asserts two causes of action against defendant, negligence

and infliction of emotional distress.  <u>See</u> Compl. ¶¶ 9-10, 12-13.  For his negligence claim, plaintiff

alleges that Sajak engaged in both "reckless" and "negligent" conduct in causing plaintiff's injury.

<u>See</u> <u>id.</u> ¶ 9-10.  Plaintiff's claim for infliction of emotional distress accuses Sajak of both

"negligently and/or intentionally" causing plaintiff's injury.  <u>See</u> <u>id.</u> ¶ 12-13.

Because plaintiff's claims include allegations of reckless and intentional conduct by

defendant, the Restatement (Second) of Contracts § 195(1) is implicated.  The Restatement

articulates a public policy that prohibits enforcement of prospective liability waivers for recklessly

or intentionally caused harms.  Under that principle, plaintiff's claims of negligence and infliction

of emotional distress, to the extent they allege (and plaintiff ultimately proves) reckless or

intentional conduct, cannot be waived by the Contestant Release Form signed by plaintiff.

Plaintiff also alleges negligent conduct as part of his claims against defendant.  For such

claims, there is no public policy prohibition on enforcing prospective liability waivers.  The

remaining inquiry, then, is whether the prospective liability waiver clearly and unambiguously

alters the traditional rules of tort liability.  <u>See</u> <u>Maiatico</u>, 287 F.2d at 351-52.  The Contestant

Release Form, in paragraph 31, purports to release defendant from "any and all claims arising out

of injury or damage to [plaintiff] as a result of, or by reason of, [plaintiff's] participation on the

program . . . ."  Pl. Mot. Summ. J., Ex. B, at 7.  Further, plaintiff agrees that "[he] will not bring or

be a party to any legal action or claim against the released parties, based upon or arising out of [his]

participation on the program or in any way related to the program . . . on any legal theory

(including, but not limited to, personal injury . . .)."  <u>Id.</u>

Although the Contestant Release Form is eight pages and single spaced, paragraph 31 is

very prominent in all capital letters.  The language used is unambiguous and clear so that plaintiff

would understand he was waiving his right to bring a claim for personal injuries suffered as a result of his participation as a contestant on Wheel of Fortune.  See Ferenc v. World Child, Inc., 977 F. Supp. 56, 60-61 (D.D.C. 1997) (finding exculpatory contract acknowledging risk of foreign adoptions sufficiently clear to bar a claim of wrongful adoption).  Therefore, by voluntarily signing the Contestant Release Form, plaintiff waived his right to bring any claims for negligently caused personal injury.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is DENIED in part, and GRANTED in part.  Plaintiff's claims based on alleged negligent conduct are barred by the Contestant Release Form, but claims based on reckless or intentional conduct are not.  A separate order has been issued.


                                        _____/s/ John D. Bates_____
                                              JOHN D. BATES
                                        United States District Judge


        Dated:   February 24, 2005_____


Copies to:

Gregory L. Lattimer
LAW OFFICES OF GREGORY L. LATTIMER
1200 G Street, NW
Suite 800
Washington, DC 20005
(202) 434-8940
Fax : (202) 434-8942
Email: lattlaw@aol.com

*Counsel for plaintiff*

Scott Douglas Goetsch
MOORE & JACKSON, L.L.C.
305 Washington Avenue
Towson, MD 21204
(410) 583-5241
Fax : (410) 583-7519
Email: goetsch@moorejackson.com
            *Counsel for defendants*